## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| TOWN OF AYER )<br><br>    Plaintiff, )<br> )<br>vs. )<br> )<br>3M COMPANY (f/k/a Minnesota )<br>Mining and Manufacturing, Co.); E.I. DU PONT )<br>DE NEMOURS & COMPANY; THE CHEMOURS )<br>COMPANY; THE CHEMOURS )<br>COMPANY, FC, LLC, CHEMGUARD, INC., )<br>TYCO FIRE  PRODUCTS, LP; )<br>ANSUL COMPANY; )<br>KIDDE-FENWAL, INC.; NATIONAL FOAM )<br>INC.; ANGUS FIRE ARMOUR CORPORATION )<br>BUCKEYE FIRE EQUIPMENT COMPANY; )<br>and JOHN DOE DEFENDANTS 1-49 )<br> )<br>    Defendants. )<br> | MDL No. 2:18-mn-2873 RMG<br><br>Civil Case No.: 2:19-cv-3120-RMG<br><br><br><br><br><br>DIRECT FILED COMPLAINT<br>AND JURY DEMAND<br>PURSUANT TO CASE<br>MANAGEMENT ORDER NO. 3 |

## PLAINTIFF TOWN OF AYER'S ORIGINAL COMPLAINT

Plaintiff Town of Ayer, Massachusetts ("Plaintiff" or "Town") alleges as follows, based on information and belief and investigation of Counsel:

### I.    SUMMARY OF THE CASE

1.    The Town of Ayer supplies drinking water to individuals and businesses in its service area.  The Town's water supply is contaminated with per- and polyfluoroalkyl substances ("PFAS") including, but not limited to, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS").

2.    The Town has detected at least six different PFAS chemicals --- including the highly toxic PFOA and PFOS in its water supplies.  The Town seeks to recover by this action the

substantial costs necessary to protect the public and restore its damaged drinking water supply wells and other property that have been, and continue to be, contaminated by PFAS.

3.      At various times from the 1960s through today, Defendants manufactured, marketed, and/or sold PFAS or products made with PFAS including Teflon, Scotchguard, waterproofing compounds, stainproofing compounds, paper and cloth coatings, waxes, and various other products.  One product is aqueous film-forming foam ("AFFF"), a firefighting agent used to control and extinguish Class B fuel fires.

4.      Defendants' AFFF contained per- and polyfluoroalkyl substances ("PFAS"), specifically, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS"), and/or contained the precursors of PFOA and PFOS.

5.      PFOA and PFOS are manufactured compounds that are toxic and persistent in the environment, do not biodegrade, move readily through soil and groundwater, and pose a significant risk to human health and safety.

6.      Defendants manufactured, marketed and/or sold PFAS with the knowledge that these toxic compounds would be released into the environment during the intended use of products made with PFAS even when the PFAS and end products were used as directed and intended by the manufacturer.

7.      At all relevant times, beginning decades ago and, upon information and belief, continuing to this date, PFAS-containing products were sold, supplied, used, and disposed in the vicinity of the Town's wells and water supplies.  During these activities, PFAS-containing products were used as directed and intended by the manufacturers, which allowed PFAS, including but not limited to PFOA and PFOS, to enter the environment.  When used and

disposed as intended, these compounds migrated through the soil and into the groundwater, thereby contaminating Plaintiff's water supply.

8.     Defendants manufactured, marketed and/or sold AFFF with the knowledge that these toxic compounds would be released into the environment during fire protection, training, and response activities even when the AFFF was used as directed and intended by the manufacturer.

9.     At all relevant times, beginning decades ago and, upon information and belief, continuing to this date, AFFF containing PFOS and/or PFOA has been used and stored at fire training facilities, airports, and military bases for fire protection, training, and response activities. During these activities, AFFF was used as directed and intended by the manufacturers, which allowed PFOA and PFOS to enter the environment.  When sprayed onto outdoor surfaces as intended, these compounds migrated through the soil and into the groundwater, thereby contaminating Plaintiff's water supply.

10.     As a result of the use of PFAS-containing products, including AFFF and others, for their intended purposes, the Town has detected several discrete PFAS chemicals, including PFOS and PFOA, in its water supplies and wells at substantial levels.

11.     Plaintiff files this lawsuit to recover compensatory and all other damages, including but not limited to the costs of designing, constructing, installing, operating and maintaining the treatment facilities and equipment required to comply with state and federal safe drinking water laws and to remove PFAS from the drinking water supplied to the public and/or for the costs of securing alternative sources of water as a result of the PFAS contamination, and to ensure that the responsible parties bear such expense, rather than the Town and its ratepayers.

## II.    PARTIES

12.    The Town is a duly incorporated subdivision of the Commonwealth with its primary address at 1 Main Street, Ayer, Massachusetts 01432.

13.    The Town's Department of Public Works operates the public drinking water system.  The Town's water is supplied by two groundwater supply sources: the Spectacle Pond Wells (PWS ID #2019000-04G and #2019000-05G) and three Grove Pond Wells (PWS ID #2019000-06G, #07G and #08G).

14.    The Town has a property interest in the water it appropriates, treats, stores, and distributes to the public as well as in its wells, piping, distribution system, and facilities (collectively, the "Town Property" or "Plaintiff's Property").

15.    The following Defendants designed, manufactured, formulated, marketed, promoted, distributed, sold (directly or indirectly), applied, discharged, disposed of and/or released the PFAS and/or products containing the PFAS that contaminates the Cal Water Wells and water supply:

       a.    Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware and authorized to conduct business in Massachussetts, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144.  3M has agreed to accept service of this Complaint via email in lieu of the formal requirements via 3M_service_AFFF_MDL@duffyandyoung.com. At all times relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

b.  3M is the only company that manufactured and/or sold AFFF containing
    PFOS.

c.  Defendant E. I. DuPont De Nemours and Company ("DuPont") is a
    corporation organized and existing under the laws of the State of Delaware
    with its principal place of business located at 974 Centre Road, Wilmington,
    Delaware 19805.  DuPont has agreed to accept service of this Complaint via
    email in lieu of the formal requirements via:
    dupontchemoursservice@shb.com and mrushton@shb.com and
    mfwilliams@shb.com. Upon information and belief, DuPont does and/or has
    done business throughout the United States, including in the state of
    Massachussetts.

d.  Defendant The Chemours Company ("Chemours") is a corporation organized
    and existing under the laws of the State of Delaware, with its principal place
    of business located at 1007 Market Street, Wilmington, Delaware 19899.
    Chemours has agreed to accept service of this Complaint via email in lieu of
    the formal requirements via:  dupontchemoursservice@shb.com and
    mrushton@shb.com and mfwilliams@shb.com.  Upon information and belief,
    Chemours does business throughout the United States, including conducting
    business in Massachussetts.

e.  In 2015, DuPont spun off its "Performance Chemicals" business to Chemours,
    along with certain environmental liabilities. Upon information and belief, at
    the time of the transfer of its Performance Chemicals business to Chemours,
    DuPont had been sued, threatened with suit and/or had knowledge of the

likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

f.   Defendant The Chemours Company FC LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware Corporation. Upon information and belief, Chemours FC conducts business throughout the United States, including conducting business in Massachussetts.  Its principal place of business is 1007 Market Street Wilmington, Delaware, 19899. Chemours FC has agreed to accept service of this Complaint via email in lieu of the formal requirements via:  dupontchemoursservice@shb.com and mrushton@shb.com  and mfwilliams@shb.com.

g.   Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. Chemguard does business throughout the United States.  Chemguard has agreed to accept service of this Complaint via email in lieu of the formal requirements via: mdlafff@jci.com and afffservice@wc.com.  Upon information and belief, Chemguard does and/or has done business throughout the United States, including in the state of Massachussettts.  This Defendant manufactured and sold AFFF that contained PFOA.

h.   Defendant Tyco Fire Products LP ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware and authorized to do business in Massachussettts, with its principal place of business located at

6

1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446. Tyco has agreed to accept service of this Complaint via email in lieu of the formal requirements via: mdlafff@jci.com and afffservice@wc.com. Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International plc, an Irish public limited company listed on the New York Stock Exchange [NYSE: JCI].

i. Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco/Ansul"). At all times relevant, Tyco/Ansul manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF, that contained fluorocarbon surfactants containing PFAS.

j. Defendant The Ansul Company (hereinafter "Ansul") is a Wisconsin corporation, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

k. Defendant Kidde-Fenwal, Inc. ("Kidde-Fenwal") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at One Financial Plaza, Hartford, Connecticut 06101. Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.) (collectively, "Kidde/Kidde Fire"). Kidde-Fenwal has agreed to accept service of this Complaint via email in lieu of the formal requirements via:

KiddeDefendantsAFFF@daypitney.com. Upon information and belief,

Kidde-Fenwal does business throughout the United States, including conducting business in Massachussettts.

l.   Defendant National Foam, Inc. ("National Foam") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501.  National Foam manufactures the Angus brand of products and is the successor-in-interest to Angus Fire Armour Corporation (collectively, "National Foam/Angus Fire"). National Foam has agreed to accept service of this Complaint via email in lieu of the formal requirements via:  smithkei@gtlaw.com.  Upon information and belief, National Foam/Angus Fire does and/or has done business throughout the United States, including in the state of Massachussettts.  This Defendant manufactured and sold AFFF that contained PFOA.

m.  Defendant Angus Fire Armour Corporation ("Angus Fire") is a Delaware corporation, with its principal offices at 141 Junny Road, Angier, North Carolina 27501. Upon information and belief, Angus Fire does and/or has done business throughout the United States, including conducting business in Massachussettts.

n.   Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.  Upon information and belief, Buckeye does and/or has done business throughout the United States, including conducting business in Massachussettts.  Buckeye has agreed to accept service of this Complaint via

email and first class and certified mail in lieu of the formal requirements via:

mcarpenter@gastonlegal.com, msingleton@gastonlegal.com and via regular

mail to:

Michael L. Carpenter
Gray, Layton, Kersh, Solomon, Furr & Smith, P.A.
516 South New Hope Road
Post Office Box 2636
Gastonia, NC 28053.

This Defendant manufactured and sold AFFF that contained PFOA.

o.  Upon information and belief, Defendants John Doe 1-49 were manufacturers

and/or sellers of PFAS and/or PFAS-containing products including AFFF.

Although the identities of the John Doe Defendants are currently unknown, it

is expected that their names will be ascertained during discovery, at which

time Plaintiff will move for leave of this Court to add those individuals' actual

names to the Complaint as Defendants.

16.    Upon information and belief, Defendant John Does 1-49 were manufacturers or

sellers of AFFF products. Although the identities of the John Doe Defendants are currently

unknown, it is expected that their names will be ascertained during discovery, at which time the

Town will move for leave of this Court to add those individuals' actual names to the Complaint

as Defendants.

17.    Any and all references to a Defendant or Defendants in this Complaint include

any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named

Defendants.

18.    When the term "Defendants" is used alone, it refers to all Defendants named in

this Complaint jointly and severally. When reference is made to any act or omission of the

9

Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.    JURISDICTION AND VENUE

19.    This Court has jurisdiction pursuant to 28 U.S.C. §1332 because complete diversity exists between Plaintiff and Defendants, and the amount in damages exceeds the minimal jurisdictional limits of this Court.

20.    Venue is appropriate in this judicial district pursuant to this Court's Case Management Order No. 3 ("CMO 3"). Plaintiff states that but for CMO 3 permitting direct filing in the United States District Court for the District of South Carolina, Plaintiff would have filed this Complaint in the United States District Court for the District of Massachusetts. Further, in accordance with CMO 3, Plaintiff hereby designates the United States District Court for the District of Massachusetts as the "Home Venue" as this case may have originally been filed there.

21.    Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391 because it is the judicial district in which Plaintiff is a resident and citizen, a substantial part of the property that is the subject of this action is situated in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

22.    Venue is appropriate in this judicial district pursuant to 28 U.S.C. section 1391(a) because a substantial part of the property that is the subject of the action is situated in this judicial district.

23.     The amount of damages exceed the minimum jurisdictional limits of this Court.

## IV.    FACTUAL ALLEGATIONS

## THE CONTAMINANTS: PFOA & PFOS

24.     PFOA and PFOS are stable manmade chemicals in a family known as per- and polyfluoroalkyl substances ("PFAS"). A PFAS is a chain of carbon atoms surrounded by fluorine atoms. PFOA and PFOS are PFAS with eight or more carbon atoms. For this reason, they are sometimes referred to as "C8."

25.     PFAS do not occur in nature. Rather, they are stable, man-made chemicals. They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

26.     PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[1]

27.     PFOA and PFOS are persistent in the human body. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[2]

28.     Since they were first produced, information has emerged showing negative health effects caused by exposure to PFOA and PFOS.

---

[1] *See* Agency for Toxic Substances and Disease Registry, *Per- and Polyfluoroalkyl Substances and Your Health*, available at https://www.atsdr.cdc.gov/pfc/health_effects_pfcs.html.

[2] *See* EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA), EPA Document Number: 822-R-16-005 (May 2016) at 55; Drinking Water Health Advisory for Perfluorooctane Sulfonate (PFOS), EPA Document Number: 822-R-16-004 ( May 2016) at 55, both available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

29.     According to the EPA, "…studies indicate that exposure of PFOA and PFOS over certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."[3]

30.     EPA has also warned that "there is suggestive evidence of carcinogenic potential for PFOS."[4]

31.     EPA has noted that "drinking water can be an additional source [of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have contaminated water supplies." In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example…an airfield at which [PFOA/PFOS] were used for firefighting."[5]

32.     The EPA has issued Health Advisory Values for PFOA and PFOS found in drinking water of 70 parts per trillion ("ppt"). When both PFOA and PFOS are found in drinking water, the combined concentrations should not exceed 70 ppt.

33.     PFOS and/or PFOA are primary components of PFAS and AFFF.

**B.     THE PRODUCT: PFAS-CONTAINING PRODUCTS**

34.         PFAS are used to make a variety of consumer and industrial goods sold,

---

[3] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[4] *See* "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822-R-16-002, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[5] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

supplied, used, and disposed of in Massachusetts.

35.    PFAS are used, for example, in nonstick cookware, waterproofing waxes, stain-preventing coatings, and aqueous film-forming foams ("AFFF") used for firefighting.

36.    When used as intended, PFAS escape these products and enter into the environment.

37.    Once PFAS, including PFOA and PFOS, are free in the environment they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions, and they are extremely persistent in the environment.  As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

38.    The use of PFAS-containing products as directed and intended by the manufacturers allowed PFOA and PFOS to enter into and onto Plaintiff's Property where these compounds migrated through the subsurface and into the groundwater, thereby contaminating the surface, soil, sediment and groundwater, as well as causing other extensive and ongoing damage to Plaintiff's Property.

39.    Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to, cause injury and damage to Plaintiff's Property.

### THE PRODUCT: AQUEOUS FILM-FORMING FOAM

40.     Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

41.    The AFFF products made by Defendants contained either or both PFOA and PFOS.

42.    The AFFF produced, marketed  and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that

generates PFOS. All other Defendants used telomerization to produce AFFF; fluorochemicals made through telomerization degrade into PFOA, but not PFOS.

43.    AFFF can be made without PFOA and PFOS. Fluorine-free foams do not release dangerous PFOA and/or PFOS into the environment.

44.    AFFF is used to extinguish fires that are difficult to fight, particularly fires that involve petroleum or other flammable liquids. AFFF works by coating the ignited fuel source, preventing its contact with oxygen and suppressing combustion. AFFF is typically sprayed directly onto a fire.

45.    When used as the Defendants intended and directed, AFFF releases PFOA and/or PFOS into the environment.

46.    Once PFOA and PFOS are free in the environment, these chemicals do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and are extremely persistent in the environment.  As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

**C.    DEFENDANTS' KNOWLEDGE OF PFOA AND PFOS HAZARDS**

47.     On information and belief, by the early 1980s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOA and PFOS are toxic; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

48.    Defendants also knew or reasonably should have known that PFOA and PFOS could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to

the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

49.    In 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[6]

50.    By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects.  Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

51.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[7]

52.    Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned "we must view this present trend with serious concern. It is certainly possible that … exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[8]

---

[6] *See* Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos. 8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.
[7] *See* Memorandum "C-8 Blood Sampling Results, Births and Pregnancies," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.
[8] *See* Memorandum "Organic Fluorine Levels," August 31, 1984, available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

53.    Based on information and belief, in 2000, under pressure by the Environmental Protection Agency ("EPA"), 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.

54.    From 1951, Dupont, and on information and belief, Chemours, designed, manufactured, marketed, and sold products containing PFOA, including Teflon nonstick cookware, and at more recently PFOAS feedstocks, such as Forafac 1157 N, for the use in the maufacuture of AFFF products.

55.    Based on information and belief, in 2001 or earlier, Dupont manufactured, produced, marketed, and sold PFOA and/or PFAS feedstocks to some or all of the AFFF product maufacturers, which were included in their AFFF products that were discharged into the environment and contaminated drinking water supplies in the Town.

56.    DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.[9]

57.    By December 2005, the E.P.A. uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the E.P.A. announced the "Largest Environmental Administrative Penalty in Agency History."[10]   The E.P.A. fined DuPont for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the E.P.A.

---

[9] *See, e.g.*, Fred Biddle, "DuPont confronted over chemical's safety," *Wilmington News Journal* (Apr. 13, 2003). The *Wilmington News Journal* is published in Wilmington, Ohio.
[10] $16.5 million.

substantial risk information about chemicals they manufacture, process or distribute in commerce."[11]

58.    By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from the Washington Works plant had reviewed the available scientific evidence and notified DuPont of a "probable link"[12] between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia.[13]  By October 2012, the C8 Science Panel had notified DuPont of a probable link between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

59.    In July 2015, E.I. du Pont de *Nemours* spun off its *chemicals* division, creating *Chemours*, a new publicly-traded company named The Chemours Company, once wholly owned by DuPont. By mid- 2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours Company.

60.    Defendants also knew or should have known that: (a) users of AFFF would likely include fire and rescue training organizations and their personnel; (b) fire and rescue personnel were foreseeable users of AFFF containing or degrading into PFOA and/or PFOS in both training and real-life fire emergency scenarios; (c) PFOA and PFOS are dangerous to the

---

[11] U.S.Envtl. Prot. Agency, Reference News Release, "EPA Settles PFOA Case Against DuPont for Largest Environmental Administrative Penalty in Agency History" (Dec. 14, 2005), https://www.epa.gov/enforcement/reference-news-release-epa-settles-pfoa-case-against-dupont-largest-environmental (last viewed on January 30, 2018).
[12] Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA/C8 exposure and a particular human disease.
[13] *See* The C8 Science Panel, *Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project* (July 15, 2011), http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf (last viewed on January 28, 2018).

environment and human health if allowed to runoff or drain into groundwater; (d) fire and rescue personnel in Barnstable County, Massachusetts foreseeably lacked knowledge of these dangers; and, (e) fire and rescue personnel would require warnings of these dangers and/or affirmative instructions in the use of AFFF.

61.     Notwithstanding this knowledge, Defendants negligently and carelessly: (1) designed, manufactured, marketed, purchased, supplied, and/or sold PFOA/PFOS, (2) issued instructions on how AFFF should be used and disposed of (namely, by washing the foam into the soil), thus improperly permitting PFOA and/or PFOS to contaminate the groundwater in and around the Town's wells; (3) failed to recall and/or warn the users of AFFF, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of groundwater contamination as a result of standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the PFOA/PFOS.

62.     As a direct result of Defendants' acts alleged in this Complaint, the Town's wells have been contaminated and will continue to be contaminated with PFAS including PFOA and PFOS, creating a public health hazard, unless such contamination is remediated. As a direct and proximate result, the Town must assess, evaluate, investigate, monitor, remove, clean up, correct, and remediate PFOA and PFOS contamination in its wells at significant expenses, loss and damage.

63.     Defendants had a duty and breached their duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and

potential human health and environmental impacts before they sold such products. They also had a duty and breached their duty to minimize the environmental harm caused by PFOA and PFOS.

## THE IMPACT OF PFOA AND PFOS ON THE TOWN'S WELLS

64.     The Town detected several PFAS including PFOA and PFOS in both the Grove Pond and Spectacle Pond Wellfields.

65.     After detecting PFAS at levels exceeding 70 ppt in Grove Pond Well 8, the Town removed that well from service.  The Town worked with the Army Corps of Engineers to install a temporary granular activated carbon ("GAC") filter system that would allow the use of Grove Pond Well 8.

66.     The Town approved a $4.2 million treatment plant to remove PFAS from the Grove Pond Wellfield.

67.     The Town has also begun the planning process for a treatment plant to remove PFAS from the Spectacle Pond Wellfield.

68.     The detection and/or presence of PFOA and PFOS, and the threat of further detection and/or presence of PFOA and PFOS, in the Town's wells in varying amounts and at varying times has resulted, and will continue to result, in significant injuries and damages to the Town.

69.     The invasion of the Town's wells with PFOA and PFOS is recurring—new contamination flows regularly and constantly into the wells each day, resulting in new harm to the property on each occasion.

70.     The injuries to the Town caused by Defendants' conduct constitute an unreasonable interference with, and damage to, the limited subterranean supplies of fresh drinking water on which the Town's wells depend. The Town's interests in protecting the quality

of its citizens' limited drinking water supplies constitutes a reason for seeking damages sufficient

to restore such drinking water supplies to their pre-contamination condition.

## **FIRST CAUSE OF ACTION**

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY DEFECTIVE DESIGN

71.    The Town realleges and reaffirms each and every allegation set forth in all

preceding paragraphs as if fully restated in this cause of action.

72.    Defendants were in the business of producing, making, fabricating, constructing,

designing, marketing, and selling PFAS-containing products and/or AFFF containing PFOA

and/or PFOS.

73.    All of Defendants' PFAS-containing products and/or AFFF products were

manufactured for placement into trade or commerce.

74.    Defendants marketed and sold AFFF for use in controlling and extinguishing

aviation, marine, fuel and other shallow spill fires.

75.    As manufacturers, Defendants owed a duty to all persons whom its products

might foreseeably harm, including the Town, not to market any product which is unreasonably

dangerous in design for its reasonably anticipated use.

76.    By manufacturing and selling PFAS-containing products and/or AFFF,

Defendants warranted that such products were merchantable, safe, and fit for ordinary purposes.

77.    Defendants breached that warranty as PFAS-containing products and/or AFFF is

unreasonably dangerous for their reasonably anticipated uses for the following reasons:

a.    PFAS including PFOA and PFOS cause extensive groundwater contamination,

even when used in their foreseeable and intended manner;

b.      even at extremely low levels, PFAS including PFOA and/or PFOS render drinking water unfit for consumption;

c.      PFAS including PFOA and/or PFOS pose significant threats to public health; and,

d.      PFAS including PFOA and/or PFOS create real and potential environmental damage.

78.      Defendants knew of these risks associated with PFAS including PFOA and PFOS, and failed to use reasonable care in the design of their PFAS-containing products and/or AFFF products.

79.      PFAS-containing products and/or AFFF containing PFOA and/or PFOS pose greater danger to the environment than would be expected by ordinary persons such as the Town and the general public.

80.      At all times, Defendants were capable of making PFAS-containing products and/or AFFF that did not contain PFOA/PFOS.  Reasonable alternative designs existed which were capable of preventing the Town's damage.

81.      The risks posed by PFAS-containing products and/or PFOA/PFOS-containing AFFF far outweigh the products' utility.

82.      The likelihood that PFAS-containing products and/or AFFF would be spilled, discharged, disposed of, or released onto land and contaminate the Town's property and the gravity of that damage far outweighed any burden on Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

83.      Had the Town known of these dangers, it would not have purchased PFAS-containing products and/or AFFF.

84.     The Town relied on Defendants' implied warranty that their PFAS-containing products and/or AFFF products were safe for use.

85.     As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of PFAS-containing products and/or AFFF, the Town has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

86.     Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking.  Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Town's property rights.

## SECOND CAUSE OF ACTION

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY FAILURE TO WARN

87.     The Town realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

88.     As manufacturers of PFAS-containing products and/or AFFF, Defendants had a duty to provide adequate warnings of the risks of these products to all persons whom its product might foreseeably harm, including the Town, the public, and public officials.

89.     PFAS-containing products and/or AFFF are unreasonably dangerous for their reasonably anticipated uses for the following reasons:

a.     PFOA and PFOS cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

22

b. even at extremely low levels, PFOA and/or PFOS render drinking water unfit for consumption;

c. PFOA and/or PFOS pose significant threats to public health; and,

d. PFOA and/or PFOS create real and potential environmental damage.

90. Defendants knew of the health and property damage risks associated with PFAS-containing products and/or AFFF, and failed to provide a warning that would lead an ordinary reasonable user or handler of a product to contemplate the dangers associated with PFAS-containing products and/or or an instruction that would have allowed the Town to avoid the damage to its property.

91. Despite Defendants' knowledge of the environmental and human health hazards associated with the use and/or disposal of PFAS-containing products and/or AFFF in the vicinity of subterranean drinking water supplies, including contamination of public drinking water supplies with PFOA and/or PFOS, Defendants failed to issue any warnings, instructions, recalls, or advice regarding PFAS-containing products and/or AFFF to the Town, governmental agencies or the public.

92. The Town would have heeded legally adequate warnings and would not have purchased products containing PFOA and PFOS, or would have taken steps to ensure that PFAS-containing products and/or AFFF were treated differently to prevent potential exposure and contamination of the environment.

93. As a direct and proximate result of Defendants' failure to warn, the Town has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

94.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies.  Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Town's property rights.

### THIRD CAUSE OF ACTION

### NEGLIGENCE

95.    The Town realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

96.    As manufacturers and sellers of PFAS-containing products and/or AFFF, Defendants owed a duty to The Town and to all persons whom its products might foreseeably harm to exercise due care in the formulation, manufacture, sale, labeling, warning, and use of PFAS-containing products and/or AFFF.

97.    Defendants knew or should have known that PFOA and/or PFOS were leaching from PFAS-containing products and/or AFFF used in as foreseen and intended.

98.    Despite the fact that Defendants knew that PFOA and PFOS are toxic, can contaminate water resources and are possible carcinogens, Defendants negligently:

a.    designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFAS-containing products and/or AFFF;

b.    issued instructions on how PFAS-containing products and/or AFFF should be used and disposed of, thus improperly permitting PFOA and/or PFOS to contaminate the groundwater in and around the Town's wells;

c.      failed to recall and/or warn the users of PFAS-containing products and/or AFFF of the dangers of groundwater contamination as a result of standard use and disposal of this product; and,

d.      failed and refused to issue the appropriate warning and/or recalls to the users of PFAS-containing products and/or AFFF, notwithstanding the fact that Defendants know the identity of the purchasers of the PFAS-containing products and/or.

99.      As a direct and proximate result of Defendants' negligence, the Town has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

100.     Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies.  Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Town's property rights.

## FOURTH CAUSE OF ACTION

### TRESPASS

101.     The Town realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

102.     Plaintiff is the owner, operator and actual possessor of real property and improvements used for collecting drinking water.

103.     Defendants manufactured, distributed, marketed and promoted  PFAS-containing products and/or AFFF with the actual knowledge and/or substantial certainty that PFAS-

containing products and/or AFFF would, through normal use, release PFOA and/or PFOS that would migrate into subterranean groundwater, causing contamination.

104.    Defendants negligently, recklessly, and/or intentionally produced and marketed PFAS-containing products and/or AFFF in a manner that caused PFOA and PFOS to contaminate the Town's property.

105.    As a direct and proximate result of Defendants' trespass, the Town has suffered and continues to suffer property damage requiring investigation, remediation and monitoring costs to be determined at trial.

106.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking.  Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Town's property rights.

## FIFTH CAUSE OF ACTION
### FRAUDULENT TRANSFER
(Against DuPont and Chemours)

107.    The Town realleges and reaffirms each and every allegation set forth in the all proceeding paragraphs as if fully restated in this cause of action.

108.    The Town seeks equitable and other relief pursuant to the Uniform Fraudulent Transfer Act against DuPont.

109.    Prior to and during 2015, Defendant Dupont was in the business of producing, making, fabricating, designing, marketing, and selling chemical feedstocks containing PFOA

and/or chemicals that can degrade into PFOA and/or other PFAS as part of their "performance chemicals business."

110.    Upon information and belief, in February 2014, DuPont formed The Chemours Company as a wholly-owned subsidiary, and used it to spin off Dupont's "performance chemicals business" products line in July 2015.

111.    In addition to the transfer of the "performance chemicals business" products line, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFOA and other PFAS.

112.    Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture, design, marketing and sale of PFOA or other PFAS components for the use in AFFF products.

113.    As a result of the transfer of assets and liabilities to Chemours described in this Amended Complaint, DuPont limited the availability of assets to cover judgements for all liability for damages and injuries from the manufacture, design, marketing, sale of PFOA or other PFAS components for the use in AFFF products.

114.    DuPont has (a) acted with intent to hinder, delay and defraud creditors, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) was engaged or was about to engage in a business for which the remaining assets of Chemours were unreasonably insufficient in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

115.    Upon information and belief, DuPont engaged in acts in furtherance of a scheme to transfer its assets out of the reach of creditors, such as the Town, that have been damaged as a result of DuPont's actions as described in this Amended Complaint.

116.    Upon information and belief, DuPont and Chemours acted without receiving a reasonably equivalent value in exchange for the transfer of obligations, and DuPont believed, or reasonably should have believed, that it would incur debts beyond Chemours' ability to pay as they became due.

117.    The Town seeks to avoid the transfer of DuPont's liabilities for the claims brought in this Amended Complaint and to hold DuPont jointly and severably liable for any damages or other remedies that may be awarded by this Court or a jury under this Amended Complaint.

## **PRAYER FOR RELIEF**

The Town  prays for judgment against Defendants, jointly and severally, as follows:

1.    Compensatory damages according to proof including, but not limited to:

a.    costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFAS/PFOA/PFOS contamination in the Town's drinking water supplies, wells, system, and facilities;

b.    costs and expenses related to past, present, and future treatment and remediation of PFAS, PFOA and/or PFOS contamination of the Town's water supplies, wells, system, and facilities;

c.    costs and expenses related to past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFAS, PFOA and/or PFOS in the Town's water supplies, wells, system, and facilities.

2.    Avoiding the transfer of DuPont's liabilities for the claims brought in this

Amended Complaint;

3.    Punitive damages;

4.    Consequential damages;

5.    Pre-judgment and post-judgment interest;

6.    Any other and further relief as the Court deems just, proper, and equitable.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, the Town demands a jury trial.

Dated:   November 4, 2019

/s/  Carla Burke Pickrel
**BARON & BUDD, P.C.**
Scott Summy
Carla Burke Pickrel
M. Cristina Sanchez
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX   75219-4281
Telephone:  (214) 521-3605

Richard M. Sandman (BBO # 440940)
**RODMAN, RODMAN & SANDMAN, P.C**.
442 Main Street, Suite 300
Malden, MA   02148-5122
Telephone:  (781) 322-3720

Philip F. Cossich, Jr.
**COSSICH, SUMICH, PARSIOLA
& TAYLOR, LLC**
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
(504) 394-9000

*Attorneys for Plaintiff*